UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEUROPUBLIC S.A. - INFORMATION
TECHNOLOGIES,

       Plaintiff,

   -v-

LADAS & PARRY LLP,

       Defendant.

24-CV-4156 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

  Plaintiff Neuropublic S.A. - Information Technologies ("Neuropublic") brings this action against its former attorneys at Defendant Ladas & Parry LLP ("L&P") for losses it alleges were caused by L&P's release of Neuropublic's invention to a third-party patent-search firm. Specifically, Neuropublic asserts claims for misappropriation of a trade secret in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831, *et seq.*; copyright infringement in violation of the federal copyright laws, 17 U.S.C. § 501(b); legal malpractice; and breach of fiduciary duty.  Before the Court is L&P's motion to dismiss Neuropublic's amended complaint. For the reasons that follow, the motion is granted.

**I. Background**

  **A. Factual Background**

  The following facts are drawn from Neuropublic's amended complaint (ECF No. 26 ("AC")) and presumed true for the purposes of resolving the motion to dismiss. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

  Neuropublic is a Greek "innovative informatics and technology company" that specializes in "developing cutting-edge technologies in geo-informatics and artificial intelligence." (AC ¶ 8.)  Several years ago, Neuropublic worked on "telemeter station

1

technology," which is used by the agriculture industry to make "real-time transmissions of relevant data collected from the field via the internet, including specifically atmospheric and soil parameters, permitting communications between the stations and other devices/platforms so that the data can be registered, analyzed, interpreted, and acted upon." (*Id.* ¶¶ 9, 11.) Neuropublic described that technology in an English-translated "Invention Disclosure." (*Id.* ¶¶ 9, 15.)

On July 29, 2020, Neuropublic retained Archontoula Papapanagiotou & Associates ("AP&A"), a Greek law firm, "for counseling on patentability of its telemeter station technology." (*Id.* ¶ 18.) On August 7, 2020, AP&A emailed L&P to inquire about L&P's potential representation of Neuropublic in "mapping and managing its IP portfolio and potentially filing for United States patent protection." (*Id.* ¶ 20.) L&P responded later that month with its fees and a request for an English translation of the Invention Disclosure. (*Id.* ¶ 21.) AP&A engaged L&P on behalf of Neuropublic to serve as its United States counsel, including assessing the patentability of the telemeter station technology and, if advisable, filing a patent application in the United States. (*Id.* ¶ 24.) In September 2020, Neuropublic received a finalized English translation of the Invention Disclosure from AP&A and authorized AP&A to send it to L&P. (*Id.* ¶¶ 26-27.) L&P replied with additional technical questions, which AP&A answered, and recommended a novelty search. (*Id.* ¶¶ 28-30.)

On October 12, 2020, AP&A authorized L&P to conduct a "preliminary novelty search" on two aspects of the technology described in the Invention Disclosure; L&P notified AP&A on October 16, 2020 that it had initiated that search. (*Id.* ¶¶ 32-33.) However, L&P "did not inform Neuropublic that it would engage a third party, or a third party outside of the United States, to conduct the preliminary novelty search," nor did L&P obtain Neuropublic's consent to do so. (*Id.* ¶ 34.) Instead, L&P sent an unredacted copy of the Invention Disclosure to Harry Jolly, an

2

employee of PatentManiac, for a preliminary novelty search. (*Id.* ¶ 35.) L&P did not condition that disclosure on any confidentiality provisions or other agreement limiting PatentManiac's use of the Invention Disclosure. (*Id.* ¶ 37.) Neuropublic alleges, also, that L&P did not inform it until 2023 that the firm had sent the entire Invention Disclosure to PatentManiac. (*See id.* ¶¶ 38-39.) However, on October 28, 2020, L&P sent AP&A a "Patentability Search Report" it had received from PatentManiac concerning the Invention Disclosure and requested that Neuropublic review the document and provide comments. (*Id.* ¶ 42.) The Patentability Search Report identified PatentManiac as the source of the document, and included a diagram of "four steps" for conducting a patent search, the first of which included: "Invention Disclosure provided by the Client is understood and analyzed." (ECF No. 33-3 ("PSR").) Neuropublic did provide comments (AC ¶ 42), after which, on December 9, 2020, L&P summarized to Neuropublic the possibility of patenting the technology described in the Invention Disclosure (*id.* ¶ 43).

On May 31, 2021, AP&A informed L&P of Neuropublic's decision not to pursue a patent in the United States. (*Id.* ¶ 44.) L&P replied, acknowledging the email and attaching "a copy of its final debit note to close out the billing in the matter." (*Id.* ¶ 45.)

On November 26, 2021, Neuropublic filed with the European Patent Office ("EPO") an application for a patent of the same technology described in the Invention Disclosure. (*See id.* ¶ 47.) The EPO informed Neuropublic that a patent application for a similar technology had been filed in Australia, which Neuropublic subsequently discovered was "nearly identical" to the technology described in the Invention Disclosure that it had provided to L&P via AP&P. (*Id.* ¶¶ 48-49.) The Australian application listed "Ankush Gosh and Milan Kumar as applicants and co-inventors," and "Rabindra Nath Shaw, Koushik Majumder, and Baishali Ghosal" as additional co-inventors. (*Id.* ¶ 50.) The Australian application noted that it was "requested by

3

IPQuad Partners" (*id.* ¶ 51), an "Indian IP research and analytical service firm with a full range of IP services" that "has its registered office in New Delhi, India" (*id.* ¶ 52). IPQuad Partners' founder, M. Jaspreet Singh, was employed by PatnentManiac for several years.* (*See id.* ¶ 53.)

### B.  Procedural Background

Neuropublic commenced this action on May 30, 2024. (ECF No. 1.) After L&P moved to dismiss the complaint on September 20, 2024 (ECF No. 19), Neuropublic filed an amended complaint on October 21, 2024 (AC). Neuropublic filed a second motion to dismiss on November 18, 2024 (ECF No. 32), along with a memorandum in support (ECF No. 34 ("Mem.")). Neuropublic opposed the second motion to dismiss on December 16, 2024 (ECF No. 38 ("Opp.")) and L&P replied in further support on January 6, 2025 (ECF No. 42). The parties jointly moved for (ECF No. 40), and the Court granted (ECF No. 41), a stay of discovery pending resolution of the present motion.

## II.  Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must include enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true but need not accept as true "mere conclusory statements" reciting the elements of a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 555. A complaint that pleads facts that are

---

* Neuropublic does not appear to dispute L&P's representation—drawn from the original complaint but omitted from the amended complaint—that M. Jaspreet Singh ceased working for PatentManiac in 2019, a year before it allegedly received the Invention Disclosure. (*See* ECF No. 34 (citing ECF No. 1 ¶ 55); ECF No. 26.) Because the Court does not reach issues of proximate causation in this Opinion, it need not determine whether it may consider such an allegation.

"merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

### III.  Discussion

Neuropublic moves to dismiss all four counts. The Court addresses each turn, ultimately holding that Counts I and II are time-barred and declining to exercise supplemental jurisdiction over Counts III and IV.

#### A.  Defend Trade Secrets Act and Copyright Claims

L&P moves to dismiss Counts I and II as untimely.

Both the DTSA (the basis for Count I) and federal copyright law (the basis for Count II) impose a three-year statute of limitations. *See* 18 U.S.C. § 1836(d) (DTSA); 17 U.S.C. § 507(b) (copyright). Likewise, the statutes' limitations periods commence when the misappropriation or infringement is "discovered" or, through reasonable efforts, "should have been discovered." 18 U.S.C. § 1836(d)) (DTSA); *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 148 (2d Cir. 2024) (copyright). No one disputes these preliminaries. Instead, the parties disagree about whether a notice Neuropublic received in October 2020 commenced both statutes' limitations periods by rendering the alleged misappropriation and infringement discoverable through reasonable efforts.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). "To approve dismissal on timeliness grounds, the court would have to conclude that plaintiff's complaint alleges facts making it apparent that plaintiff discovered, or by the exercise of reasonable diligence should have discovered, the alleged

5

misappropriations at least three years before the statute of limitations ran." *Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 178 (E.D.N.Y. 2018) (quoting *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 978, 985 (Fed. Cir. 2014)) (cleaned up). Still, though it is often inappropriate to resolve questions of inquiry notice on a motion to dismiss, it is "possible when 'the facts needed for determination of when a reasonable plaintiff of ordinary intelligence would have been aware' of the action's accrual are present in the Complaint." *Hardwire, LLC v. Freyssinet Int'l Et Cie*, No. 21-CV-6870, 2023 WL 1819321, at *3 (E.D.N.Y. Feb. 8, 2023) (quoting *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 156 (2d Cir. 2003)) (brackets omitted).

      As a threshold matter, Neuropublic argues that the Court may not consider the Patentability Search Report in resolving the motion to dismiss because it falls outside of the amended complaint. (*See* Opp. at 15.) But the amended complaint repeatedly references that document, including by alleging that Neuropublic received it in October 2020. (*See* AC ¶¶ 41-43.) In ruling on a motion to dismiss, the Court "may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 592 (S.D.N.Y. 2015) (taking judicial notice of "fines levied by regulators in three countries against six Defendants" in determining whether plaintiffs adequately pleaded claims arising under Sections 1 and 3 of the Sherman Act). Because Neuropublic incorporated and relied upon the Patentability Search Report in its amended complaint, the Court may, and does, consider it in resolving the present motion. *See Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 252 (S.D.N.Y. 2023)

("[P]laintiffs repeatedly cite to misappropriations of trade secrets that allegedly occurred at least four years before the [action] was filed. Therefore, the Court may consider the statute of limitations defense on this motion to dismiss.").

Still, consistent with the standard for determining compliance with a statute of limitations on a motion to dismiss, the Court must accept as true Neuropublic's allegation that it did not *actually know* that L&P disclosed the Invention Disclosure to PatentManiac until 2023. (*See* AC ¶ 39.) But whether Neuropublic had reason to know of that disclosure is another matter. The Patentability Search Report identifies the creator of the report as "PatentManiac" and lists, as "Step I" of the "[p]atent search process," "Invention Disclosure provided by the Client is understood and analyzed." (PSR at 1-2.) The only reasonable interpretation of that document, in October 2020, would have been that L&P sent PatentManiac the Invention Disclosure given to it by Neuropublic, through AP&A, to undergo a patent search. Accordingly, Neuropublic should have discovered, through reasonable diligence (e.g., asking its attorneys how PatentManiac produced the report or examining the report itself) that the Invention Disclosure had been disclosed.

Neuropublic does not seriously dispute that conclusion, arguing instead that the Patentability Search Report "says nothing about *how* PatentManiac analyzed the Invention Disclosure or whether other technological or contractual safeguards were in place to prevent and/or prohibit PatentManiac from misappropriating the Invention Disclosure." (Opp. at 15-16.) That distinction fails. First, as to the copyright claim, Neuropublic's claim accrued when L&P copied and reproduced the Invention Disclosure, regardless of whether it did so confidentially. *See Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 924 n.10 (2d Cir. 1994) (noting the uncertainty of whether private reproduction of a copyrighted work is infringement or fair use).

Even if Neuropublic did not know of the "extent of [L&P's] infringement until" less than three years before commencing suit, that it had sufficient information in October 2020 to assert its claim or investigate further renders the present claims time-barred. *Gong v. Savage*, No. 23-CV-7355, 2024 WL 4696128, at *3 (S.D.N.Y. Nov. 4, 2024) (quotation marks omitted). Second, as to both claims, even if they accrued only upon Neuropublic's discovery of L&P's lack of safeguards or confidentiality provisions in disclosing the Invention Disclosure, reasonable diligence would have revealed both. That is especially true here because Neuropublic claims that the *mere disclosure* of the Invention Disclosure was actionable because it occurred without its consent. If that was truly Neuropublic's impression, then it would have been unreasonable for Neuropublic not to inquire with L&P about the nature of the disclosure to PatentManiac, after which Neuropublic would have discovered the lack of safeguards or confidentiality protections. *See Zirvi v. Flatley*, 838 F. App'x 582, 585 (2d Cir. 2020) (summary order) (noting that inquiry notice arises where "circumstances raise[] a probability" that a violation has occurred (parenthetically quoting *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012))); *see also My Mavens, LLC v. Grubhub, Inc.*, No. 20-CV-4657, 2023 WL 5237519, at *36 (S.D.N.Y. Aug. 14, 2023) (holding, on a motion to dismiss, that reasonable diligence would have revealed alleged misappropriation that was "prominently displayed" in a mobile app used by plaintiff's principal (quotation omitted)). Ultimately, these allegations are precisely the ones for which the reasonable diligence standard was created: where all the plaintiff needed to do to discover a DTSA claim was ask a single question about a disclosure it knew had occurred. It is of no moment that "Neuropublic had no obligation to police L&P, especially because L&P was its fiduciary" (Opp. at 17), because Neuropublic—according to its own complaint—had direct evidence that its supposed fiduciary infringed its copyright in 2020. At that point, the only

reasonable course would have been to inquire about the nature of the disclosure, which would have revealed the alleged misappropriation, as well.

Accordingly, Counts I and II are dismissed.

### B.     Legal Malpractice and Breach of Fiduciary Duty Claims

The remaining legal malpractice and fiduciary-duty claims are brought under New York state law.  From the pleadings, the Court is not assured of its diversity jurisdiction (which Neuropublic does not plead), as the amended complaint does not allege the citizenship of each member of L&P.  *See Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 457 (1900) (deeming partnerships to be citizens of the states in which each of their partners are citizens); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that *Great Southern* deems partnerships to be citizens of the states in which limited, as well as general, partners are citizens). Because Neuropublic has Greek citizenship, if even one L&P partner is not an American citizen, this Court lacks diversity jurisdiction.  *See N.Y. Metro. Reg'l Ctr., L.P. II v. Mammoet USA Holding, Inc.*, 552 F. Supp. 3d 451, 456-57 (S.D.N.Y. 2021) (holding, under *Carden*, that a lawsuit between a foreign citizen and a partnership comprising both foreign and domestic partners does not satisfy 28 U.S.C. § 1332(a)(3)).  Thus, only supplemental jurisdiction provides a basis for considering the remaining state-law claims, which is ordinarily improper when the federal claims are dismissed so early in litigation.  *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) ("Although the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'" (quoting *In re Merrill Lynch Ltd. P'Ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998))).

Accordingly, Counts III and IV are dismissed without prejudice.  *See* Fed. R. Civ. P. 41(b).

### IV. Conclusion

Defendant's motion to dismiss the amended complaint is GRANTED. Counts I and II are dismissed with prejudice. Counts III and IV are dismissed without prejudice.

The Clerk is directed to close the motions at ECF Nos. 19 and 32, to lift the stay, to enter judgment of dismissal, and to close the case.

SO ORDERED.

Dated: April 14, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge